177 N.J. Super. 471 (1981)
427 A.2d 76
MARTIN KIKKERT, JR., PLAINTIFF-RESPONDENT,
v.
ELIZABETH KIKKERT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1981.
Decided February 10, 1981.
*473 Before Judges FRITZ, POLOW and JOELSON.
Henry Ramer argued the cause for appellant.
Ledislas F. Feher argued the cause for respondent.
The opinion of the court was delivered by POLOW, J.A.D.
This appeal involves another intricate and perplexing equitable distribution problem which we have not addressed in a reported appellate opinion. We are called upon to decide whether a "vested" pension plan which will provide future monetary benefits to plaintiff husband is equitably distributable. His pension rights are vested in that he will be entitled to enjoy the financial benefits in or about 1990 when he reaches 60 years of age, whether or not he continues in his present employment. Should he fail to survive until then, no pension benefits will be *474 available except under certain limited circumstances. The elusiveness of the correct resolution of this problem is underscored by the recent publication of two conflicting trial court opinions, Mueller v. Mueller, 166 N.J. Super. 557 (Ch.Div. 1979), which held that equitable distribution is not available, and Weir v. Weir, 173 N.J. Super. 130 (Ch.Div. 1980), which held that it is:
The trial record is brief and there is little factual dispute. Plaintiff Martin Kikkert, Jr., was 49 years old on the date set for equitable distribution, had completed more than the necessary ten years of employment with Continental Can Company for pension eligibility and will be entitled to full pension benefits at age 62 whether or not he continues in his present employment, provided only that he survives. He may elect reduced early pension benefits at age 60 and there are special provisions for payments in the event of a plant shut-down, layoff or physical disability. The trial judge relying on Mueller, held that such pension rights are not subject to equitable distribution. Weir had not yet been published.
The court is authorized by law "to effectuate an equitable distribution of property, both real and personal which was legally and beneficially acquired by [the parties] or either of them during the marriage." N.J.S.A. 2A:34-23. The critical task is to properly interpret the phrase "legally and beneficially acquired." We have been instructed to employ a "comprehensive" definition and include such property as "is the direct or indirect result of an expenditure of effort on the part of a spouse, ...." Painter v. Painter, 65 N.J. 196, 215, 217 (1974). It was therefore concluded that "all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce.[1]Id. at 217. "[T]he concept of vesting should probably find no significant place in the developing law of equitable distribution *475 ... These now customary usages of the concept of vesting are in no way relevant to the question of effecting an equitable distribution...." Stern v. Stern, 66 N.J. 340, 348 (1975). Our inquiry should more properly focus on whether rights or benefits were "acquired" by the parties or either of them during the marriage, rather than on whether they were "vested." Ibid; Pellegrino v. Pellegrino, 134 N.J. Super. 512, 515-516 (App.Div. 1975). See Scherzer v. Scherzer, 136 N.J. Super. 397, 401-402 (App.Div. 1975), certif. den. 69 N.J. 391 (1976).
"The right to receive monies in the future is unquestionably... an economic resource" subject to equitable distribution based upon proper computation of its present dollar value. Kruger v. Kruger, 73 N.J. 464, 468 (1977); Pellegrino v. Pellegrino, supra; Scherzer v. Scherzer, supra; Blitt v. Blitt, 139 N.J. Super. 213 (Ch.Div. 1976). Therefore, pension benefits "[a]s a form of deferred compensation earned during coverture" constitute distributable assets to "the extent to which the anticipated benefits will have been generated by the mutual effort of the parties." McGrew v. McGrew, 151 N.J. Super. 515, 518 (App.Div. 1977). Still, in all of the decisions permitting equitable distribution of pension rights prior to Mueller and Weir, the pensioner had a present right to receive some kind of immediate benefit, either by way of an absolute right to reimbursement of the employee's contributions, as in Pellegrino, or the immediate right to receive retirement benefits, as in Kruger, whether or not the employee had contributed to the cost of the plan. In McGrew we held a noncontributory plan equitably distributable although the husband had not yet retired because he was already beyond the age at which he could opt for retirement and thus had "control over it" in the sense that he could enjoy his pension at that time if he so chose. McGrew v. McGrew, supra, 151 N.J. Super. at 518-519.
The trial judge here agreed with the trial court opinion in Mueller and rejected the pension plan for equitable distribution because it could not be reached by the employee for withdrawal *476 of funds until some time in the future. The Mueller court relied exclusively upon Mey v. Mey, 79 N.J. 121 (1979), which construed the phrase "legally and beneficially acquired" as mandating, for equitable distribution eligibility, a present ability to exercise control over or use the asset. Id. at 124-125.
However, we find that Mey does not apply here nor was it intended to control inclusion or exclusion of pension rights for equitable distribution. Mey involved a trust fund established for a young man prior to his marriage.[2] Under the terms of the trust he received the corpus at age 25, by which time he had married. The Supreme Court found that the corpus was legally and beneficially acquired upon the husband's 25th birthday during the marriage. Thus, the corpus of the trust was includible for equitable distribution. Although the opinion equates "beneficially" with "subject to present enjoyment," it specifically distinguishes "[t]he susceptibility of an income interest to equitable distribution" as dealt with in Kruger v. Kruger, supra, 73 N.J. at 468-469 id. at 124, which ordered equitable distribution of pension benefits in a factual setting in which the pensioner was already eligible to receive them.
We agree with the view expressed by Judge Serpentelli in Weir v. Weir, supra, 173 N.J. Super. at 137 that the Supreme Court recognized the uniqueness of a pension plan interest as an asset. It is the result of direct or indirect efforts expended by one or both parties to the marriage  it is additional compensation for services rendered for the employer and a right acquired during the marriage. Hence, equitable considerations mandate its inclusion for distribution where, as here, the employee has already qualified for benefits and the other spouse, during the marriage, has foregone enjoyment of that additional compensation represented by the cost of the plan whether or not it requires employee contributions. Each spouse had the same *477 expectation of future enjoyment with the knowledge that the pensioner need only survive to receive it. Hence, we reverse and remand for further consideration by the trial court of the factors indicated below.
We do not underestimate the complexity of making equitable distribution a reality under the circumstances presented here, and we fully recognize that other situations will arise with even more complex problems. Here, the record contains a report of a certified public accountant, marked exhibit D, purporting to provide the present value of plaintiff's pension plan at different rates of interest under four alternative situations. The values range from a high of approximately $35,000 to a low of approximately $22,000. The transcript contains no indication that the document was offered to the trial judge, but there appears no objection by defendant to its inclusion on appeal. In any event, it was apparently not considered by the trial judge since he concluded that "plaintiff's noncontributory pension plan is not subject to equitable distribution." In the report the accountant insists that the plan has an ascertainable present value despite his recognition that benefits are "not payable if the participant dies."
We perceive a significant relationship between proof of present value as of the date for equitable distribution and the technique to be employed in effecting it. Where the court is satisfied, based upon appropriate proofs, that present value has been established and there are other assets to be distributed, a firm and final division may be achieved free of future contingencies. Where, as here, ultimate enjoyment of pension benefits depends upon survival of the employee, present value considerations must include actuarial computations based upon life expectancy tables. R. 1:13-5. Although fixing present value under such circumstances may be difficult and inexact, nevertheless immediate final resolution of the method of distribution is to be encouraged, preferably by voluntary agreement whenever *478 possible. Long-term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible. This goal may be best accomplished, if a present value of the pension plan is ascertainable, by fixing the other spouse's share thereof, as adjusted for all appropriate considerations, including the length of time the pensioner must survive to enjoy its benefits, to be satisfied out of other assets, leaving all pension benefits to the employee himself.
On the other hand, where other assets for equitable distribution are inadequate or lacking altogether, or where no present value can be established and the parties are unable to reach agreement, resort must be had to a form of deferred distribution based upon fixed percentages. In such event, the trial judge must determine how best to accomplish equitable distribution of all distributable property including, as appropriate, the sharing in fixed percentages of the pension payments when received. See In re Marriage of Brown, 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (Sup.Ct. 1976).
One other issue is raised on appeal, involving the value of the marital residence as fixed by the court which differs from that stipulated by the parties. No factual findings nor basis in law is offered to support that determination. On remand the trial judge is instructed to accept the stipulated value or set forth specific findings of fact and legal conclusions upon which the ultimate ruling is based. Reiser v. Simon, 63 N.J. Super. 297 (App.Div. 1960).
Reversed and remanded for further proceedings consistent with this opinion. The parties shall be permitted the opportunity to supplement the record by additional factual and expert testimony as may be deemed necessary and appropriate. We do not retain jurisdiction.
NOTES
[1] The Painter rule, of course, has been limited by the amendment to N.J.S.A. 2A:34-23, effective December 31, 1980, as it applies to gifts and inheritances.
[2] The result in Mey is now within the framework of the recent legislative enactment referred to in footnote 1.