NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1724-23

ESTATE OF LEONOR R. DIZON,
by her Administrator Ad
Prosequendum, TERESA
FINAMORE and TERESA
FINAMORE, individually,

      Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF HUMAN
SERVICES, DIVISION OF
MEDICAL ASSISTANCE AND
HEALTH SERVICES,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 8, 2025**
>
> **APPELLATE DIVISION**

Submitted March 4, 2025 – Decided April 8, 2025

Before Judges Susswein, Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3466-23.

Solomon Law Firm, LLC, and Sarno, Da Costa, D'Aniello & Maceri, LLC, attorneys for appellant (Franklin P. Solomon, Daniel Devinney and Paul M. Da Costa, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

General, of counsel; James A. McGhee, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PEREZ FRISCIA, J.A.D.

In this Medicaid lien dispute, plaintiff Estate of Leonor R. Dizon (Estate), by its administrator ad prosequendum, Teresa Finamore, appeals from a Law Division order denying its application to extinguish the Division of Medical Assistance and Health Services' (Division) lien asserted against the Estate's assets pursuant to N.J.S.A. 30:4D-7.2 (estate asset statute). The Division's lien seeks recovery of $214,391.95 in Medicaid benefits Dizon (decedent) received after turning fifty-five years old. The Division filed its lien against all the Estate's assets, including any award the Estate receives from its pending survivorship action, N.J.S.A. 2A:15-3. The Estate disputes that a survivorship award is subject to a Division lien under the estate asset statute for all of decedent's Medicaid benefits paid, arguing that its interest in the survivorship claims did not constitute property of the estate at the time of decedent's death, as required by the statute. Instead, it contends, the Division is only entitled to reimbursement from an award for decedent's tort-related medical expenses for her injuries pursuant to a separate statutory provision specifically addressing third-party liability recovery (TPL statute), N.J.S.A. 30:4D-7.1. We conclude the Division's lien is valid against all the Estate's

2

assets under the estate asset statute, N.J.S.A. 30:4D-7.2, which includes any survivorship action award, and therefore affirm.

I.

Decedent received Medicaid benefits from August 1, 2006, through March 31, 2018. On March 21, 2018, while at Trinitas Regional Medical Center (Trinitas), decedent fractured her neck after falling from her bed. She passed away ten days later.

On August 9, the Surrogate's Court issued letters of administration to decedent's daughter, Finamore. In September, the Division sent the Estate a letter advising of its lien and asserting a claim against the Estate's assets, pursuant to 42 U.S.C. § 1396p and the estate asset statute, for $214,391.95. The Division acknowledged its "recovery [wa]s limited to the value of the estate." (Emphasis omitted). The Division asserted that "[t]he amount sought represent[ed] funds expended by the New Jersey Medicaid program for medical and health-related services and supplies received by the dece[dent] on or after age [fifty-five]." It attached decedent's certified Medicaid payment records. The Division noticed the Estate that it could file an action in Superior Court challenging the validity of the lien prior to a final agency adjudication.

On January 15, 2019, the Estate filed a four-count medical malpractice complaint, which included survivorship claims.[1] On April 1, the Division filed its statutory lien for $214,391.95, pursuant to N.J.S.A. 30:4D-7.2 to -7.6, with the State of New Jersey and sent notice of the recorded lien to the Estate. The Division noted the claim was against the "Estate['s] assets includ[ing] but not limited to . . . [the] [v]alue of the [e]state[,] including proceeds from [the] medical malpractice lawsuit."

On October 19, 2023, the Estate filed an order to show cause and verified complaint against the Division seeking a summary disposition pursuant to Rule 4:67-1(a). The Estate requested the court issue an order providing: (1) that the Division's lien against the Estate for Medicaid reimbursement of medical expenses paid on decedent's behalf was limited to recovery for tort-related medical expenses under the New Jersey Medical Assistance and Health Services Act's[2] TPL statute, N.J.S.A. 30:4D-7.1(b), and not subject to reimbursement under the estate asset statute, N.J.S.A. 30:4D-7.2,

---

[1] We note the Estate maintains that no wrongful death claim, N.J.S.A. 2A:31-1 to -6, was pleaded in the complaint, although counts three and four specifically claim Finamore's loss of companionship. As it is undisputed that a wrongful death claim is not subject to a Medicaid lien, we need not address these claims.

[2] N.J.S.A. 30:4D-1 to -19.5.

for all of decedent's received Medicaid benefits after turning fifty-five;[3] (2) that any Division lien claim above the tort-related medical expenses against the Estate's assets, more particularly against the Estate's survivorship claim recovery, was extinguished; (3) a determination of the maximum Medicaid reimbursement amount owed to satisfy the Estate's obligation under the TPL statute; and (4) any other legal and equitable relief. Notably, the Estate's medical malpractice action was not resolved.

On January 9, 2024, after argument, the court issued an order and accompanying cogent written decision denying the Estate's requested relief. The Estate argued the TPL statute governed the Division's reimbursement from the Estate's survivorship claim recovery because unliquidated personal injury claims are not an asset subject to Medicaid reimbursement. Specifically, the Estate posited the Division could only assert a Medicaid lien for reimbursement of medical expenses against assets the decedent had legal title to or an interest in at the time of her death. Therefore, it contended the Division was only entitled to reimbursement under the TPL statute for medical expenses recovered from the third-party medical malpractice defendants.

---

[3] We note the parties do not dispute the accuracy of the Division's lien amount of $214,391.95 for Medicaid correctly paid on decedent's behalf for services received after she turned fifty-five.

A-1724-23

The Division argued it could pursue reimbursement pursuant to both the TPL statute, N.J.S.A. 30:4D-7.1(b), and the estate asset statute, N.J.S.A. 30:4D-7.2. The Division elaborated that under the TPL statute, it was entitled to reimbursement for medical expenses it paid on decedent's behalf that were causally related to her personal injuries, which the Estate was pursuing in its survivorship action. Further, the Division argued under the estate asset statute, it was entitled to reimbursement from any of the Estate's assets for benefits paid on decedent's behalf after the age of fifty-five. The Division argued that any recovery by the Estate on its survivorship claims was an estate asset pursuant to N.J.S.A. 30:4D-7.2(a)(3).

The court found that the estate asset statute controlled, and the Division validly levied its lien. It noted the Division was "not simply seeking to enforce its rights against a third-party recovery—[the lien's] scope [wa]s broader." In considering the Estate's argument that any survivorship claim recovery was not property of the Estate under N.J.S.A. 30:4D-7.2(a)(3), the court determined the statute's plain language was clear, and a survivorship claim met the definition of an asset. The court held decedent possessed an "interest at the time of [her] death" in the medical malpractice claims. Accordingly, the court held the Estate's claims "form[ed] part of the estate subject to [the Division's] medical lien."

6

On appeal, the Estate contends the court erroneously: characterized decedent's malpractice claims as an estate asset subject to a Medicaid lien; failed to recognize that the source of the funds the Division claimed reimbursement against dictated the applicable statutory authority; and determined the Estate's survivorship claims were property, even though decedent's inchoate claims were not property held at the time of her death.

## II.

"[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 38 (App. Div. 2023) (alteration in original) (quoting Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019)). We review a court's statutory interpretation de novo. In re H.D., 241 N.J. 412, 418 (2020).

When interpreting a statute, we first review the actual language of the statute. Goldhagen v. Pasmowitz, 247 N.J. 580, 599 (2021). "Where statutory language is clear, courts should give it effect unless it is evident that the Legislature did not intend such meaning." Bubis v. Kassin, 184 N.J. 612, 626 (2005) (quoting Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 354 (2003)). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give

sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 519 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the language of a statute is clear, a court's task is complete." Doe v. Est. of C.V.O., 477 N.J. Super. 42, 56 (App. Div. 2023) (quoting In re Plan for Abolition of the Council on Affordable Hous., 214 N.J. 444, 468 (2013)), certif. denied, 257 N.J. 232, 257 N.J. 242, and 257 N.J. 259 (2024). "When reviewing a statute's plain language, we do not parse its provisions. Rather, we consider 'not only the particular statute in question, but also the entire legislative scheme of which it is a part.'" State v. Italiano, 480 N.J. Super. 1, 9 (App. Div. 2024) (quoting State v. Olivero, 221 N.J. 632, 639 (2015)); see also N.J.S.A. 1:1-1 ("In the construction of . . . statutes[,] . . . words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature[,] . . . be given their generally accepted meaning, according to the approved usage of the language.").

"[I]t is well recognized that 'Medicaid, enacted in 1965 as Title XIX of the Social Security Act, [42 U.S.C. §§ 1396 to 1396w-6], is designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services.'" G.C. v. Div. of Med. Assistance & Health Servs., 249 N.J. 20, 26 (2021) (alteration in original) (quoting Atkins v. Rivera, 477 U.S. 154, 156 (1986)); see also 42

8                                                                    A-1724-23

U.S.C. § 1396-1. "Participation in the Medicaid program is optional for states; however, 'once a State elects to participate, it must comply with the requirements' of the federal Medicaid Act and federal regulations adopted by the Secretary of Health and Human Services in order to receive federal Medicaid funds." D.C. v. Div. of Med. Assistance & Health Servs., 464 N.J. Super. 343, 354 (App. Div. 2020) (quoting Harris v. McRae, 448 U.S. 297, 301 (1980)).

Pursuant to the New Jersey Medical Assistance and Health Services Act, the Division is responsible for administering Medicaid in our State. See N.J.S.A. 30:4D-4. The Division is required to manage the State's Medicaid program in a fiscally responsible manner. See Dougherty v. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 91 N.J. 1, 4-5, 10 (1982) (remanding back to the agency to consider the public interest and the "increasing social demands for limited public resources").

To further expand available funding for Medicaid benefits, the "federal Medicaid law has required participating states to enact certain 'estate' recovery provisions as part of their medical assistance plans." Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004). "[T]o satisfy the federal estate recovery requirements, states must define a decedent's estate to include at least 'all real and personal property and

A-1724-23

other assets included within the individual's estate, as defined for purposes of State probate law.'" In re Est. of Brown, 448 N.J. Super. 252, 258 (App. Div. 2017) (quoting 42 U.S.C.A. § 1396p(b)(4)(A)); see also 42 U.S.C. § 1396p(b)(4)(B) (permitting states to broadly define estate to include "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death . . . , including such assets conveyed to a survivor, heir, or assign of the deceased"). Accordingly, the Division "is authorized and empowered to use 'all reasonable measures to ascertain the legal or equitable liability of third parties to pay for care and services' of the recipient and, where appropriate, to seek reimbursement." In re Kietur, 332 N.J. Super. 18, 23-24 (App. Div. 2000) (quoting N.J.S.A. 30:4D-7(k)).

## III.

The Estate contends the Division's lien for reimbursement of all the Medicaid benefits paid on decedent's behalf after she reached the age of fifty-five is invalid and uncollectable against the Estate's survivorship action damages obtained from a third-party tortfeasor, because the Division is limited to only recovering the decedent's "tort-related" medical expenses. The Estate posits that because most of the Division's $214,391.95 lien is for decedent's medical expenses that are "wholly unrelated to the personal injury action," the Division is foreclosed from "maximiz[ing] its reimbursement out of any tort

10

recovery." In support of these arguments, the Estate argues any survivorship claim recovery must be treated only "as [a] third-party tort recover[y]" under the TPL statute and federal law, see 42 U.S.C. §§ 1396a(a)(25)(A)-(B), 1396a(a)(25)(H), 1396k(a), and not an estate asset, which would permit the Division to assert its lien under the estate asset statute and federal law, 42 U.S.C. §§ 1396p(b)(1)(B), (b)(4). The underpinning of the Estate's argument is that its survivorship claims are not an estate asset subject to the Division's lien because decedent had no legal title or interest in the claims at the time of her death. We are unpersuaded.

We begin our review of the Estate's arguments by examining the plain language of the estate asset statute that the Division relies on for reimbursement. The estate asset statute authorizes the Division to file a lien against the "estate of [a Medicaid] recipient." N.J.S.A. 30:4D-7.2(a)(2). Specifically, the estate asset statute states that "a lien may be filed against and recovery sought from the estate of the deceased recipient for [Medicaid] assistance correctly paid . . . on [the deceased recipient's] behalf for all services received when he [or she] was [fifty-five] years of age or older." Ibid.; see also 42 U.S.C. §1396p(b)(1)(B). The plain meaning of the statute permits the Division to seek reimbursement for all Medicaid benefits paid on a deceased recipient's behalf by filing a lien against their estate. The statute

specifically authorizes the Division to file an estate asset lien only after the recipient's death. Again, the Estate does not dispute the accuracy of the Division's lien amount or that decedent received Medicaid benefits after she turned fifty-five years of age. As decedent undisputedly received the Medicaid benefits that comprise the lien, the Estate's argument that the Division "dress[ed] up its demand as an estate lien" is without merit. The estate asset statute directly authorizes the Division's lien for all paid Medicaid-covered medical services from August 1, 2006, through March 31, 2018, against the Estate's assets.

We now turn to the Estate's argument that "[c]ritical to the inquiry is the statutory definition of an 'estate asset.'" N.J.S.A. 30:4D-7.2(a)(3) provides that an "'estate' includes all real and personal property and other assets . . . as defined in N.J.S.[A.] 3B:1-1, as well as any other real and personal property and other assets in which the recipient had any legal title or interest at the time of death, to the extent of that interest." See N.J.S.A. 3B:1-1 (defining estate as "all of the property of a decedent . . . as the property is originally constituted and as it exists from time to time during administration"). It is clear an estate asset is widely defined to include all interests a Medicaid recipient possessed at the time of death. Therefore, a decedent's estate possesses as an estate asset any interest in medical malpractice claims held by the Medicaid recipient.

A-1724-23

An estate is indisputably charged to pursue survivorship claims on behalf of the beneficiaries, as the Estate did here, and seek recovery against a tortfeasor. See F.F. v. G.A.D.R., 331 N.J. Super. 23, 27-28 (App. Div. 2000) (noting that a survivorship claim is an asset of a decedent's estate). "Pursuant to the Survival Act, any cause of action a potential plaintiff had during his or her lifetime survives the decedent's death[,] and the executor or administrator of the decedent's estate may sue on that action." Monk v. Kennedy Univ. Hosp., Inc., 473 N.J. Super. 178, 183 (App. Div. 2022) (citing N.J.S.A. 2A:15-3). Relevantly, N.J.S.A. 3B:10-25 provides that an estate administrator "has the same standing to sue . . . as . . . [the] decedent had immediately prior to death." Further, the Estate's representative must "take all steps reasonably necessary for the management, protection and preservation of[] the estate in his [or her] possession." N.J.S.A. 3B:10-29. As decedent held an interest in the potential medical malpractice claims arising from her injuries sustained at Trinitas, her interest passed to the Estate after her death.

Further, we are unpersuaded by the Estate's argument that decedent did not hold an interest in her potential medical malpractice claims at the time of her death because she had not filed the claims within the ten days prior to her passing. Our Supreme Court has held that "[i]ntangibles may also constitute property." Dugan v. Dugan, 92 N.J. 423, 428 (1983). Moreover, "'[t]he right

13

to receive monies in the future is unquestionably . . . an economic resource' subject to equitable distribution based upon proper computation of its present dollar value." Kikkert v. Kikkert, 177 N.J. Super. 471, 475 (App. Div. 1981) (emphasis omitted) (quoting Kruger v. Kruger, 73 N.J. 464, 468 (1977)).[4] The court correctly found decedent's medical malpractice claims formed part of the estate as an asset. We conclude decedent's interest in any recovery from alleged medical malpractice became an asset of the Estate, which the Estate thereafter pursued as survivorship claims for decedent's beneficiaries.

We next address the Estate's argument that the TPL statute dictates the amount the Division may recover on its lien because statutorily, the source of the funds limits the Division's ability to collect through its lien. The TPL statute states that "[w]hen a recipient, his [or her] guardian, executor, administrator or other appropriate representative brings an action for damages

---

[4] We note a plaintiff's personal injury claims, which would include survivorship claims, have long been recognized as an asset in other contexts. We note there is currently pending New Jersey legislation to address consumer legal funding loans, which are recognized transactions in which a loan company purchases, and a consumer sells, a contingent right to receive an amount of a potential personal injury claim award. Generally, a plaintiff receives loan funds from a third party who retains a recovery interest against a future potential tort litigation award. Consumer Legal Funding Act, S. 1475/A. 1931 (2024). Black's Law Dictionary defines "litigation funding" as "[a]n agreement between a litigant and third party to finance a lawsuit in exchange for a share of any recovery. Litigation funding is a type of investment in a lawsuit, typically for the plaintiff." Black's Law Dictionary 1117 (12th ed. 2024).

14                                                                      A-1724-23

against a third party, written notice shall be given to the . . . Division," and after the Estate receives a recovery, the Division "shall immediately [be] reimburse[d] . . . in full from the proceeds of any settlement [or] judgment." N.J.S.A. 30:4D-7.1(b).  It is undisputed that the TPL statute only permits the Division to be reimbursed for a Medicaid recipient's tort-related medical expenses recovered from a third party.  However, the Estate's contention that the source of funds dictates the Division's reimbursement is unsupported because federal and state statutes plainly provide that it is the recipient's living status that governs the Division's authority to attach a lien for reimbursement. The federal Medicaid Act's anti-lien statute states, "<u>No lien may be imposed</u> against the property of any individual <u>prior to his [or her] death</u> on account of medical assistance paid or to be paid on his [or her] behalf under the State [Medicaid] plan."  42 U.S.C. § 1396p(a)(1) (emphasis added).  The Estate misapplies the TPL statute because the Division was authorized under the estate asset statute, N.J.S.A. 30:4D-7.2(a)(2), to seek reimbursement against the Estate's assets for Medicaid benefits paid on decedent's behalf after she turned fifty-five, and it was not limited to reimbursement from any tort-related medical expenses recovered from Trinitas.

We further reject the Estate's argument that the United States Supreme Court's holding in <u>Arkansas Department of Health & Human Services v.</u>

A-1724-23

Ahlborn, 547 U.S. 268 (2006), specifically precludes the Division from asserting a Medicaid lien for the $214,391.95 in medical expenses it paid on decedent's behalf. The United States Supreme Court addressed whether the State of Arkansas Department of Health and Human Services (ADHS) could assert a statutory Medicaid lien against a living recipient's entire medical malpractice settlement with a third-party tortfeasor. Id. at 272-75. It limited ADHS's lien after finding that relevant federal Medicaid statutes, including the anti-lien statute, 42 U.S.C. § 1396p(a), restricted reimbursement from the tort settlement to "designated . . . payments for medical care." Id. at 284. Relevantly, the long-established public policy considerations underpinning the anti-lien statute, which was designed to protect living injured Medicaid recipients' rights to the use and benefit of their tort recoveries, are not implicated here. See id. at 285 (acknowledging that a living Medicaid recipient's settlement proceeds constitute property); see also Kietur, 332 N.J. Super. at 24 (noting that "no statutory requirements are imposed upon [the Division] to perfect a lien against a living Medicaid recipient who recovers monies from a liable third party"). Accordingly, the TPL statute and Ahlborn do not preclude the Division's lien against the Estate for Medicaid benefits paid on decedent's behalf after turning fifty-five. The Division is permitted

16

under the estate asset statute, N.J.S.A. 30:4D-7.2(a)(2), to seek reimbursement from the Estate for decedent's paid Medicaid medical expenses.

To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division