226 N.J. Super. 281 (1988)
543 A.2d 1062
DIANE F. WEISS, PLAINTIFF-RESPONDENT,
v.
ALAN R. WEISS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1988.
Decided July 11, 1988.
*283 Before Judges BILDER, MUIR, Jr. and SKILLMAN.
John F. Segreto argued the cause for appellant (Segreto & Segreto, attorneys, John F. Segreto, of counsel and on the brief).
Celine Y. November argued the cause for respondent (Powers & November, attorneys, Michael J. Nidoh, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*284 The primary issue presented by this matrimonial appeal is whether a house acquired before marriage, with the intention that it would become the parties' marital home, is exempt from equitable distribution because title was placed in the name of only one of the parties. Also involved are subsidiary issues regarding the equitable distribution of other property, including defendant-husband's interest in a family business, and the fixing of defendant's obligations with respect to pendente lite support.

I
In early February of 1967, defendant gave plaintiff an engagement ring, and afterwards an engagement party was held and a wedding was planned for the following summer. Around this time, defendant spoke to his mother about buying a house from her which she had recently inherited. Defendant also spoke to plaintiff about the house, asking whether "we want to go on a nice honeymoon or buy the house." The parties agreed to buy the house. Defendant and his mother had the house appraised and established an $18,000 purchase price based on that appraisal. A contract of sale was entered into on February 10, 1967 and a closing was held on April 25, 1967, four months before the parties' marriage on August 26, 1967. Defendant made a $5,000 down payment on the house and executed a note and mortgage with a bank for the balance of the purchase price. Plaintiff testified that she understood the house would be jointly owned because defendant described it as "their house." However, plaintiff did not attend the closing and title was placed solely in defendant's name. Plaintiff moved into the house in June 1967, two months before the parties were married. Defendant moved into the house immediately after the marriage, and the parties continued to reside in the house until they separated in October of 1985.
The parties made substantial repairs and improvements to the house both before and during the marriage. Before the *285 marriage, the parties had the bathroom completely remodeled. Plaintiff also did a substantial amount of work herself, including hanging curtains, finishing the floors, and cleaning the entire house. After the marriage, the parties replaced a hot water heater, converted the furnace to gas, replaced the roof, replaced the front and back porches, installed combination storm and screen windows, refinished the kitchen and insulated the attic.
The trial judge found that there was implied contract between the parties that the house, although acquired in defendant's name while the parties were engaged, would be a marital asset. Therefore, he concluded that "[d]esignation of the title in the name of one of the parties should not bar a determination of the property's intended and active status as a marital asset." The trial judge also concluded that the house should be valued as of the date of trial, that its value was $155,000, and that the property should be divided equally between the parties. Accordingly, he gave defendant 60 days from the entry of judgment to purchase plaintiff's share in the house, and further directed that if defendant did not avail himself of this opportunity, the house should be sold and the proceeds divided equally.[1] We affirm the trial judge's conclusion that the marital home is subject to equitable distribution, but conclude that his valuation of this marital asset was not adequately explained.
N.J.S.A. 2A:34-23 authorizes a court, where a judgment of divorce is entered, to "make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." The appellate court decisions interpreting the phrase "during the marriage" in N.J.S.A. 2A:34-23 have all been concerned with establishing the terminal point of a marriage. See, e.g., Brandenburg v. Brandenburg, *286 83 N.J. 198 (1980); Di Giacomo v. Di Giacomo, 80 N.J. 155 (1979); Smith v. Smith, 72 N.J. 350 (1974); Rothman v. Rothman, 65 N.J. 219 (1974); Painter v. Painter, 65 N.J. 196 (1974). None of these decisions have involved a determination of when a marriage commences for the purpose of establishing which assets are subject to equitable distribution. Therefore, the decisions dealing with the terminal point of marriage are the most pertinent guide in determining whether a marital home acquired before a marriage ceremony may be subject to equitable distribution.
In Painter v. Painter, supra, the Court observed that "[r]eading [N.J.S.A. 2A:34-23] literally, the terminal point [of marriage] would seem to be the day the judgment of divorce is granted." 65 N.J. at 217. However, the Court concluded that the use of this date would be impractical and decided that the "better rule" would be that "for purposes of determining what property will be eligible for distribution the period of acquisition should be deemed to terminate the day the complaint is filed." 65 N.J. at 218. This rule was refined in Smith v. Smith, supra, 72 N.J. at 360-362, where the Court held that when the parties to a divorce action have entered into a formal settlement agreement accompanied by their physical separation, the date of the written agreement should be treated as the date of termination of the marriage for the purpose of equitable distribution. The Painter rule was further refined in Di Giacomo v. Di Giacomo, supra, where the Court held that when separated marital partners orally agree to divide marital assets and then divide a large portion of those assets in accordance with the agreement, the date of the oral agreement should be treated as the date of termination of the marriage. See also Portner v. Portner, 93 N.J. 215 (1983); Brandenburg v. Brandenburg, supra, 83 N.J. at 209-210. Thus, the Court has rejected a literal interpretation of the phrase "during the marriage" in N.J.S.A. 2A:34-23 in favor of an interpretation which is administratively workable and yet also in furtherance of the underlying policies of equitable distribution.
*287 The automatic recognition of the date of the marriage ceremony as the commencement date of the marriage for the purpose of equitable distribution would be the easiest rule to apply. Moreover, there is dictum in Painter that "[o]bviously [the time period intended by the words `during the marriage'] commences as soon as the marriage ceremony has taken place." 65 N.J. at 217. However, the Court in Painter further indicated that its comments should not be understood to "provide certain and ready answers to all questions which may arise as to whether particular property is eligible for distribution" and that "[i]ndividual problems must be solved as they arise, within the context of particular cases." 65 N.J. at 218 n. 7. Furthermore, the cases decided since Painter have recognized that N.J.S.A. 2A:34-23 should be construed, to the extent feasible, to effectuate the public policy underlying the equitable distribution law, which is to recognize that marriage is "a shared enterprise, a joint undertaking, that in many ways ... is akin to a partnership." Smith v. Smith, supra, 72 N.J. at 361, quoting Rothman v. Rothman, supra, 65 N.J. at 229.
We conclude that the Court's approach to the interpretation of N.J.S.A. 2A:34-23 in Painter and its progeny supports the conclusion that a date prior to the marriage ceremony can, in appropriate circumstances, qualify as the date of commencement of the marriage for the purpose of deciding whether property is a marital asset subject to equitable distribution. Just as the Painter line of cases has recognized that the marital partnership may terminate prior to the entry of a judgment of divorce, we believe that for the purpose of triggering a right of equitable distribution a marital partnership may be found to have commenced prior to the marriage ceremony, where the parties have adequately expressed that intention and have acquired assets in specific contemplation of their marriage. This conclusion recognizes that the "shared enterprise" of marriage may begin even before the actual marriage ceremony through the purchase of a major marital asset such as a house and substantial improvements to that asset.
*288 We add that this conclusion is supported by reported trial court decisions in Raspa v. Raspa, 207 N.J. Super. 371, 383-387 (Ch.Div. 1985) and Coney v. Coney, 207 N.J. Super. 63 (Ch.Div. 1985). Contra Rolle v. Rolle, 219 N.J. Super. 528 (Ch.Div. 1987); Mangone v. Mangone, 202 N.J. Super. 505 (Ch.Div. 1985); see also Thompson, "Premarital Assets Revisited: The Asset Acquired `In Contemplation of Marriage'" 6 N.J. Family Lawyer 45 (1986). Moreover, it is supported by authority in other jurisdictions. See, e.g., Bender v. Bender, 282 Md. 525, 386 A.2d 772, 778-779 (Ct.App. 1978); Stallings v. Stallings, 75 Ill. App.3d 96, 30 Ill.Dec. 718, 393 N.E.2d 1065 (App.Ct. 1979); In re Marriage of Altman, 35 Colo. App. 183, 530 P.2d 1012 (Ct.App. 1974).
In the present case, the trial court properly concluded that the marital home acquired in defendant's name during the parties' six month engagement is subject to equitable distribution. The record amply supports the trial judge's findings that plaintiff participated with defendant in the decision to purchase the marital home, that the parties intended it to be their marital home at the time of purchase, and that plaintiff was actively involved in making improvements to the home both prior to and after the marriage. These facts provided sufficient support for the trial judge's conclusion that there was an implied contract between the parties that the home would be a marital asset. Thus, the trial judge properly concluded that this implied contract should be enforced.
The trial judge also properly concluded that the marital home should be valued as of the date of trial rather than the date the complaint was filed. Plaintiff continued to reside in the marital home and to participate in its maintenance for more than a year after the complaint for divorce was filed. Moreover, the increase in value of the home between the filing of the complaint and the trial resulted from market factors rather than from any improvements or other contributions made by defendant. Under these circumstances, it would be inequitable *289 to deny plaintiff her share of the home's accretion in value subsequent to the date the complaint was filed. See Wadlow v. Wadlow, 200 N.J. Super. 372, 384-385 (App.Div. 1985); Bednar v. Bednar, 193 N.J. Super. 330, 333 (App.Div. 1984).
However, the trial judge failed to provide an adequate explanation for his finding that the value of the marital home was $155,000. Although the judge stated that his finding was based "on the evidence presented by the respective parties by way of expert testimony," the only expert testimony on this issue was provided by defendant's expert, who valued the home at $124,000. Although the trial judge was not required to accept this opinion, he should have explained how he arrived at a different figure. Consequently, the case must be remanded for a reconsideration of the value of the marital home and for adequate findings of fact relevant to this issue.

II
The other major asset which the trial judge found to be subject to equitable distribution was the enhancement in value during the marriage of defendant's interest in a family business. The business primarily involves the retail sale of insurance. Defendant works in the business with his mother and father. The only other employees are clerical and secretarial. Defendant's father made series of gifts to defendant in 1972, 1974 and 1981 of 45% of the shares of stock of the two corporations through which the business is conducted.
The trial judge concluded that the value of defendant's interest in the family business as of the date he was given the stock was not subject to equitable distribution, because a 1980 amendment to N.J.S.A. 2A:34-23 exempts gifts from equitable distribution. However, the judge also concluded that any enhancement in the value of the business resulting from the parties' contributions to the business during the marriage is subject to equitable distribution. He found that enhancement in value to be $95,000 and plaintiff's equitable share to be $20,000.
*290 Our decisions in Scherzer v. Scherzer, 136 N.J. Super. 397, 400-401 (App.Div. 1975), certif. den. 69 N.J. 391 (1976), and Grayer v. Grayer, 147 N.J. Super. 513, 519-520 (App.Div. 1977) firmly support the trial judge's conclusion that the enhancement in value during the marriage of defendant's interest in the family business is subject to equitable distribution. See also Painter v. Painter, supra, 65 N.J. at 214 n. 4. As explained in Scherzer,
[A]ny increase in value [in a closely held corporation] occurring after the marriage should be considered eligible [for equitable distribution] to the extent that it may be attributable to the expenditures of [sic] the effort of plaintiff wife. See Painter v. Painter, supra, at 196.
The theory is that a homemaker's contribution cannot be given a monetary worth and its value may be gleaned from the earnings of the employed spouse. [136 N.J. Super. at 401].
Plaintiff contributed to defendant's business by her efforts as a homemaker and as the caretaker of their child, thereby enabling her husband to work 60 hours per week, and she also worked part time in the business herself. These efforts entitle her to share in any enhancement in the value of defendant's interest in the business which occurred during the marriage.
However, we find no support in the record for the trial judge's finding that the value of defendant's interest in the business was enhanced by $95,000 during the marriage. A court appointed expert valued defendant's total interest in the family business at $82,154 and defendant's expert valued his interest at approximately $60,000. But neither of these experts expressed any opinion concerning how much the business increased in value following the gifts of stock to defendant. Moreover, it is clear from the testimony of defendant and his father that the business had substantial value when defendant was given his interest. Thus, the enhancement in value of defendant's interest during the marriage had to have been substantially less than $95,000. Accordingly, it is necessary to remand the matter for reconsideration of the amount of the enhancement in value of defendant's interest in the family business during the marriage and for a redetermination of plaintiff's equitable share of that enhanced value.

*291 III
Defendant also argues that his interests in the stock of two publicly traded corporations and in savings accounts were improperly subjected to equitable distribution, and that the trial court improperly fixed his obligations under various pendente lite support orders. These arguments are clearly without merit. R. 2:11-3(e)(1)(E). Defendant failed to present any evidence that his 44 shares of Midlantic Bank and his 16 shares of American Brands were acquired prior to the marriage. Since the burden of establishing the immunity of an asset from equitable distribution rests with the party asserting the immunity, Painter v. Painter, supra, 65 N.J. at 214, the trial judge properly concluded that defendant's shares of stock in these corporations are subject to equitable distribution. The trial judge also properly concluded that the balances in the parties' savings accounts as of the time of the filing of the complaint for divorce are subject to equitable distribution even though defendant later depleted those accounts in order to discharge some of his pendente lite support obligations. A party to a matrimonial action cannot use marital assets to discharge support obligations and then claim that those marital assets are unavailable for equitable distribution. Finally, the trial judge did not commit any factual error or abuse his discretion in resolving the various issues as to defendant's obligations under the pendente lite support orders.
Accordingly, we remand the case for reconsideration of the value of the marital home and of the enhancement in value of defendant's interest in the family business during the marriage and a redetermination of plaintiff's interests in those marital assets. In all other respects the judgment of divorce is affirmed.
NOTES
[1] We stayed this part of the judgment of divorce pending appeal.